## JIM BROWN v. THE STATE.

### No. 3116.    Decided May 16, 1906.

**1.—Murder in Second Degree—Charge of Court—Self-Defense—Adequate Cause —Weight of Evidence.**

Upon a trial for murder where the States evidence showed that at the beginning of the altercation between defendant and deceased, the latter stooped and picked up a shoe-last, weighing some two pounds, and threw it at defendant, whereupon the latter threw a hatchet at deceased, and thereupon caught him and they clinched and appellant stabbed deceased with a knife, which killed him; and appellant testified that he rushed upon deceased because the latter ran his hand in his pocket as defendant thought to get a knife to kill him; there was no error in the charge of the court that the throwing of the shoe-last by the deceased would in itself not justify defendant in killing the deceased; the court having also instructed the jury that if by the throwing of said shoe-last such blow inflicted pain that this would be adequate ·cause, and that they could also consider the throwing of the shoe-last on other issues in the case; and further charged the jury fully upon self-defense with reference· to defendant's statement that deceased was about to draw a weapon.

**2.—Same—Argument of Counsel—Charge of Court.**

Upon a trial for murder where the State's attorney in response to an argument of defendant's counsel stated that the reason of the prejudice against the defendant and his race was brought upon themselves, by the damnable heinous crime such as murder and rape committed by them, but the court instructed the jury to disregard the remarks of the State attorney, there was no reversible error, although such remarks were improper.

**3.—Same—Verdict—Sufficiency of Evidence.**

Where upon trial for murder the evidence showed that the State's witnesses saw no weapon or knife in the hands of deceased, and none was found about the scene of conflict, but defendant nevertheless testified that deceased cut him with a knife, there is a strong suggestion that such wounds may have been self-inflicted, and the facts sustain the verdict.

· Appeal from the District Court of Runnels. Tried below before Hon. John W. Goodwin.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*John I. Guion* and *M. C. Smith,* for appellant.—On the question of charge: Craiger v. State, 13 Texas Ct. Rep., 738. On the question of argument of counsel: Coleman v. State, 14 Texas Ct. Rep., 371.

*J. E. Yantis,* Assistant Attorney-General, for the State.—On charge of the court: Cesure v. State, 1 Texas Crim. App., 25; Reynolds v. State, 17 id., 424; Chesson v. State, 42 S. W. Rep., 293; Darnell v. State, 43 Texas Crim. Rep., 86.

HENDERSON, Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at fifteen years confinement in the penitentiary.

A summary of the facts on the part of the State shows that appellant and deceased (negroes) lived in the town of Ballinger; appellant was a barber and deceased porter in a saloon. They boarded at Ellen Devall's (a negress) who kept a boarding house. This house contained six rooms. The main part of the house being two stories, containing two rooms below and two above; and an L, used for kitchen and dining room. Ellen Devall slept in the east room downstairs; deceased in the west room upstairs, and appellant's room was the east room upstairs. The stairway was approached through Ellen's room. About 12 or 1 o'clock on the morning of May 28th, deceased (George McNeas) came into Ellen's room on his way to his room, and struck a match over Ellen's bed. Appellant was at the time in bed with Ellen, and he raised up and remarked to deceased, "Nigger, can't you see your way through without striking a match over me." Deceased replied, "I did not mean anything by striking a match in here." To which appellant made some muttering reply. Deceased said he was not thinking anything about appellant and was not caring anything about him; and if he did not like it to help himself. Deceased then went upstairs to his room. Appellant got out of bed, put on his clothes, and went upstairs. In a short time Ellen (who remained downstairs) heard quarreling, and went upstairs. Deceased was standing in his room a few feet from the door between his room and appellant's, and appellant was in his room. They were standing quarreling with each other. Ellen intervened between the parties; told them to stop quarreling; took hold of defendant's shoulder, turned him towards the stairway; told him to go downstairs and behave himself. At this juncture deceased said something to him, appellant turned and advanced towards deceased a step or two. At this time deceased stooped and picked up a shoe-last, weighing some two pounds, and threw it at appellant; and appellant grabbed a hatchet and threw it at deceased. Immediately after throwing this weapon, appellant ran into deceased's room, caught him and the two clinched. In a short time deceased jerked loose from appellant and ran down the steps. Appellant ran after him, and threw a chair down the stairway at him. Deceased went across the street, to Cook's house, and in a short while expired. He was found to have been cut in a number of places; several deep wounds in the left arm, one in the left side, cutting one or two of his ribs; one in the right side, and a cut across the stomach, inflicting a wound from which his entrails protruded. The eye-witnesses for the State, Ellen Devall and Solomon Devall (her son) who were sleeping in deceased's room, state that they did not see deceased have any knife or use any knife. They saw appellant during the time the parties were clinched using a knife. After the difficulty appellant was also found to have a number of wounds on his person, one in the left temple above his left eye, which ap-

pears to have been a severe wound, and one or two on his left arm, and one in his back under his shoulder blade. These wounds are described as knife-wounds. But the witnesses state that the knife was evidently dull, from the character of the wounds. The wound in the temple and under the shoulder blade appear to have been of a rather serious character. Appellant states that the reason he made the rush on deceased was, that after deceased threw the last at him, he ran his hand in his pocket and he thought was getting his knife to kill him, and he rushed on him; that after he clinched him, deceased began cutting him, and he ran his hand in his pocket, got his knife out with one hand, opened it with his teeth during the fight, and then cut deceased in order to prevent deceased from killing him. Search was made by the sheriff and others for the knife with which deceased may have inflicted the wounds on appellant; they found no knife on deceased's person; they found none along the trail of blood from Ellen's house across to Cook's house; they found an old knife in deceased's room, with dust on it, which seemingly had not been used. It is stated that the wounds on appellant could have been inflicted by such a weapon as a hatchet. This is a sufficient statement of the case to discuss the assignments of error. There are no bills of exception to the introduction or rejection of testimony. The court submitted murder in the first and second degrees, manslaughter and self-defense to the jury.

Appellant reserved an exception to this portion of the court's charge, to wit: "In this connection you are instructed that the fact, if it be a fact, that deceased, George McNeas struck defendant with a shoe-last would not justify him in taking the life of the deceased, but such fact may be considered by you on the other issues of this case submitted to you in this charge." Appellant insists that this charge was objectionable because it was a charge on the weight of the evidence; a limitation of the defendant's right to defend himself against the attack upon him by deceased with the shoe-last; and, "because it was calculated to and did in fact have the effect on the jury to withdraw from their consideration the act of deceased in throwing the shoe-last at defendant and striking him with it, thereby destroying the effect of such act constituting 'an adequate cause,' as a basis for the 'sudden passion' moving defendant to slay his adversary, which act on the part of deceased in throwing the iron shoe-last and striking defendant, had it been considered by the jury, which would have been done but for said charge, then under the evidence, if defendant had not been acquitted the jury would not and could not have found him guilty of a higher grade of offense than manslaughter. Because the issue of self-defense by reason of the charge, is made to depend alone upon the fact, as to whether or not, at the very time of the difficulty deceased was about to make a deadly assault upon defendant with a weapon, other than the two pound iron shoe-last; and that said charge in the manner in which it was given, was misleading and highly prejudicial to the rights of defendant as presented by the evidence." But for the fact

that the court instructed the jury distinctly that if they believed deceased. threw a shoe-last at defendant and struck him, and that the blow inflicted pain, and that the same caused passion and rendered defendant's mind incapable of cool reflection, and that in such state of mind, he cut and killed deceased, they could only find him guilty of manslaughter, the above charge would unquestionably have been erroneous. But, as we understand the charge complained of, it distinctly tells the jury, while it would not justify the homicide, they could consider it on other issues of the case as submitted to them in the charge; and this distinct issue of manslaughter was submitted, and consequently we do not believe the jury could have been mislead by the charge complained of. We take it, that the charge of the court was correct in telling the jury that the throwing of the last by deceased at defendant and striking him therewith, would not of itself be a justification for the homicide. Did said charge impinge on defendant's right of self-defense? The court gave a charge on self-defense, predicating the same on actual or apparent danger; and informed the jury that if deceased made any demonstration as if to draw a deadly weapon, and defendant, from the acts or demonstrations of the deceased, reasonably believed that his life was in danger, or he was in danger of serious bodily injury, and under such circumstances he cut and killed deceased, in order to save himself from such injury, to acquit him on the ground of self-defense. And further informed the jury that under such circumstances he was not required to retreat in order to avoid the necessity of killing, but had the right to advance upon deceased to take his life, if it reasonably appeared to him from his standpoint to be necessary to preserve his own life, or to prevent some serious bodily injury being inflicted upon him. In that connection, he further instructed the jury that it was not necessary to the right of self-defense that deceased should have been armed, or that the acts or demonstrations of deceased were in fact to draw a deadly weapon, if it reasonably appeared to defendant from his standpoint that danger existed, he had the same right to defend against it, and to the same extent as if the danger had been real. It occurs to us that this charge adequately presented the issue of self-defense, and although the jury had previously been told that throwing and striking appellant with the shoe-last by deceased would not have been justification, yet they were told that the subsequent acts of deceased, as testified to by defendant, and which caused him to rush on deceased to wit: that he believed from deceased's demonstration deceased was about to draw a weapon, this would authorize appellant to defend himself and take the life of deceased. We do not believe that, considering the charge on self-defense, the charge complained of was calculated to confuse the jury or mislead them as to appellant's right to act in his defense on the theory testified to by him.

Appellant further complains of the remarks of the district attorney in his closing argument, to the effect: in speaking of the racial prejudice

against the negro, he stated, "that the reason of such prejudice against defendant and his race was brought upon themselves by the damnable heinous crimes, such as murder and rape, committed by them." Appellant excepted to this on the ground, as alleged by him, that the same was calculated to prejudice the minds of the jurors against defendant. The court explains this by stating that one of defendant's attorneys, in his argument to the jury, had spoken commendatory of the colored race, indulged in praise of the faithfulness of the negro race during the war-times, etc.; and that the district attorney in the remarks complained of was answering the defendant's attorney. And furthermore, the court says that he instructed the jury to disregard the remarks of the district attorney and not to consider the same. We do not believe that the district attorney was authorized to indulge in the remarks complained of. However, under the instruction of the court to the jury to disregard said remarks, we do not believe the same constitutes reversible error.

An examination of the facts sustains the verdict of the jury. Indeed from the facts stated, to say the least of it, it is very questionable as to whether deceased ever inflicted any wound on appellant. Two eye-witnesses were present when the conflict was going on, and they saw no weapon or knife in the hands of the deceased. None was found about the scene of the conflict, or along the bloody pathway pursued by deceased in going across the street, and no weapon was found on his person. There is a strong suggestion that the wounds found on appellant may have been self-inflicted. The judgment is affirmed.

*Affirmed.*

[Motion for rehearing overruled without written opinion.—Reporter.]